# IN THE COURT OF APPEALS OF IOWA

No. 15-0684
Filed February 8, 2017

**STATE OF IOWA,**
　　　　Plaintiff-Appellee,

**vs.**

**IVAN FERNANDO FIERRO,**
　　　　Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Andrea J. Dryer, Judge.

Ivan Fierro appeals his conviction for second-degree sexual abuse. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Danilson, C.J., and Doyle and McDonald, JJ.

**DANILSON, Chief Judge.**

Ivan Fierro appeals his conviction for second-degree sexual abuse, in violation of Iowa Code sections 709.1(3) and 709.3(1)(b) (2015).[1] On appeal, he contends the conviction is against the weight of the evidence and the district court erred in its evidentiary rulings. Finding no abuse of discretion in the trial court's decisions, we affirm.

**I. Background Facts and Proceedings.**

Fierro was charged with committing a sex act with a person under the age of twelve from 2008 through 2010. In response to defense motions, the trial court ruled in limine:

> 2. The State shall not make any reference to the defendant's record of prior criminal arrests or convictions, the defendant's use of any name other than Ivan Fierro to identify himself, and any charges pending against the defendant other than the one at issue in this case until further offers of proof and objections have been made to the court.
> 3. Evidence that the defendant physically abused D.F. or that D.F. saw the defendant physically abusing D.F.'s mother or sister may be admitted for the limited purposes of explaining D.F.'s delay in or fear of reporting the conduct that the defendant is alleged to have committed and responding to contentions that D.F. fabricated the allegations.

Jury trial began on December 9, 2014. Fifteen-year-old D.F. testified she was Fierro's adopted daughter, and beginning when she was in fourth grade (age nine) and ending when she was in sixth grade, when her mother left for work in the morning, Fierro would take her to his room, take her clothes off, and touch her breasts and vagina. She also testified on two occasions the sexual abuse

---

[1] The State's allegations concerned conduct occurring in 2008 through 2010 and that conduct would be governed by the code in effect at the time. However, there have been no substantive changes to the applicable code sections since 1999, and we simply refer to the 2015 Iowa Code.

occurred other than in his bedroom. Once, when D.F. got out of the shower, Fierro "came downstairs and put [her] on top of the washer and dryer," and touched her "the same way as he did in his bedroom." D.F. was just wearing a towel; the defendant picked her up, put her on the washer/dryer, told her to lie down on the towel, and touched her breasts and vagina. The other occasion occurred in D.F.'s bedroom, where she stated he got into bed with her, took off her pants, and touched her vagina. She also testified that while she resisted Fierro's actions, "[h]e was very abusive, so [she] didn't say anything out of fear." Without objection, D.F. explained Fierro would hit her, her sister (M.F.), and her mother with a belt or "whatever he could grab" and left injuries. D.F. also testified she did not report the sexual abuse when Fierro moved out (when she was in sixth grade) "[b]ecause he could still come back."

In 2013, after D.F.'s mother and Fierro were officially divorced and M.F. "started having issues psychologically," D.F. told her mother and her mother's fiancé (Ed) about the sexual abuse. D.F. told them she did not want to go to the police because Fierro was out of their lives and she "felt there was nothing more that could be done."

D.F.'s mother testified M.F. was later hospitalized for her mental-health issues. In filling out admissions paperwork that included a question about sexual abuse, the mother reported to a nurse:

> I said this had happened to my other daughter. I don't know if it's happened to [M.F.], because she doesn't communicate with me, so I don't know how to answer this. And she told me that her being a mandatory reporter, she needed to report that. And that's how all of this started.

Ed testified about D.F.'s disclosure, stating D.F. was "very nervous" and "very upset" when she told them what happened and "[w]e were all crying" because of what D.F. told them. Ed testified he wanted to tell the police, but D.F. and her mother "were scared" of Fierro.

Sara Tawil, a department of human services (DHS) child abuse investigator, testified about her role investigating D.F.'s complaint of sexual abuse and in observing the interview of D.F. conducted at the child protection center. Defense counsel began cross-examination of Tawil asking, "There was some discussion about physical abuse as well during your interview." Tawil had not testified about physical abuse prior to defense counsel asking.

Defense counsel also began his cross-examination of investigator Jeff Tyler with questions about physical abuse of "other kids in the home."

Fierro announced he intended to testify. The State indicated it would, on cross-examination, ask about his past use of false names. Fierro's counsel objected. The court ruled "limited questions about whether he's used other names on other occasions and who he gave the identification to should be allowed" because "[c]redibility is important in this case." Fierro then testified, denying the allegations and acknowledging using other names to gain employment.

On appeal following his conviction, Fierro contends the conviction is against the weight of the evidence and the district court erred in allowing evidence of his past use of false names and prior bad acts.

**II. Weight of the Evidence**.

"Unlike the sufficiency-of-the-evidence analysis, the weight-of-the-evidence analysis is much broader in that it involves questions of credibility and refers to a determination that more credible evidence supports one side than the other." *See State v. Nitcher*, 720 N.W.2d 547, 559 (Iowa 2006). On appeal, we are "limited to a review of the exercise of discretion by the trial court, not of the underlying question of whether the verdict is against the weight of the evidence." *State v. Reeves*, 670 N.W.2d 199, 203 (Iowa 2003).

D.F.'s testimony about the sexual abuse was consistent in all relevant details and consistent with other evidence as to timelines. The inconsistencies in some details were pointed out by Fierro's counsel and were for the jury to consider. Because the evidence does not preponderate "heavily against the verdict," *see id.* at 202, we find no abuse of the trial court's denial of Fierro's motion for new trial.

**III. Evidentiary Rulings.**

We review evidentiary rulings for an abuse of discretion. *State v. Huston*, 825 N.W.2d 531, 536 (Iowa 2013). "A court abuses its discretion when its 'discretion was exercised on grounds or for reasons clearly untenable or to an extent clearly unreasonable.'" *State v. Putnam*, 848 N.W.2d 1, 8 (Iowa 2014) (citation omitted).

**A. Other Names.** As concerning the court's admission of Fierro's use of other names, this court has looked to federal case law and found the use of false names or identities "highly probative in regards to credibility and truthfulness of

the defendant." *State v. Martinez*, 621 N.W.2d 689, 696 (Iowa Ct. App. 2000);

*see United States v. Mansaw*, 714 F.2d 785, 789 (8th Cir.), *cert. denied*, 464

U.S. 986 (1983). We find no abuse of discretion.

**B. Physical Abuse.** As to Fierro's motion in limine concerning allegations

of physical abuse, the district court ruled:

> [T]he ruling that the [defendant] physically abused [D.F.] that [D.F.]
> saw the defendant physically abusing her mother or sister is
> admissible for the limited purposes of explaining any delay that she
> may have had in reporting the conduct or fear that she may have
> had of the defendant that could have contributed and responding to
> contentions that she may have fabricated the allegations.
>      I do find that the evidence of those prior bad acts is relevant
> and material to legitimate issues concerning the sexual abuse
> charge and that the probative value of that physical abuse evidence
> is not substantially outweighed by the danger of unfair prejudice to
> the defendant. The relationship between the parties is relevant to
> issues concerning the allegations of sexual abuse, that evidence
> will be allowed.

We review the district court's evidentiary ruling regarding the admission of

prior bad acts for abuse of discretion. *State v. Reynolds*, 765 N.W.2d 283, 288

(Iowa 2009).

Fierro contends "the evidence of the prior alleged assaults should not

have come in. The evidence of the prior bad acts was not relevant to show why

D.F. delayed reporting." We disagree the evidence was irrelevant. A recognized

exception to the prior bad acts rule includes "proof of a sex abuse victim's state

of mind." *State v. Alderman,* 578 N.W.2d 255, 258 (Iowa Ct. App. 1998). Acts of

physical abuse by a perpetrator are relevant to explain a child's failure to report

or a delay in reporting sexual abuse. *See State v. Bayles*, 551 N.W.2d 600, 605

(Iowa 1996) (noting a victim's familiarity with the defendant's prior crimes is relevant to explain a victim's fear and attempt to appear agreeable).

Nonetheless, we believe it to be the better course that a district court condition the admissibility of the evidence of physical abuse upon the defendant's raising the issue of a delay in reporting in the first instance. *See, e.g.*, *State v. Fisher*, 202 P.3d 937, 946 (Wash. 2009) ("Only if defense counsel made an issue of [the victim's] delayed reporting did the physical abuse become relevant to the determination of whether sexual abuse occurred."). When the State elicited the challenged testimony from D.F., the defense had not yet made an issue of the delay in reporting. However, we conclude any error in the timing of the admission did not deny Fierro a fair trial.

Fierro asserts that "[e]ven if the evidence was somehow relevant, it should have been excluded because the probative value was substantially outweighed by the danger of unfair prejudice." The State asserts Fierro's complaint is that at some point during the trial, the balance between probative value and prejudicial effect shifted. The State argues defense counsel did not make contemporaneous objections to testimony about particular acts of physical abuse and did not reassert an objection under Iowa Rule of Evidence 5.403(b),[2] and therefore the issue is not properly before us.

It is evident Fierro's defense strategy was to discredit D.F.'s allegations and, in fact, discredit the testimony of all D.F.'s family who were witnesses. D.F. explained on direct examination she did not report the abuse when it occurred

---

[2] Whether trial counsel should have re-asserted a rule-5.403 motion is more appropriately addressed in postconviction proceedings.

because of her fear of Fierro. Fierro's attorney cross-examined D.F., including her claims of physical abuse. Fierro's counsel also cross-examined investigator Tyler and DHS employee Tawil regarding the physical abuse to others in the home consistent with the strategy to discredit D.F. and her family members. Fierro counsel's theme in closing argument relied upon the inconsistent testimony of family members concerning whether another child was abused and if the mother or Fierro had caused an injury to still another child, in an effort to show D.F. and all her family were not credible witnesses. Even if Fierro has not waived his right to assert error because of the order in limine, we conclude it was not prejudicial. *See State v. Duncan*, 710 N.W.2d 34, 44-45 (Iowa 2006) (holding admission of bad acts is not prejudicial where the same evidence was central to the defense trial strategy).

We also observe the jury was instructed,

> Evidence has been received concerning physical abuse alleged to have been committed by the defendant. The defendant is not on trial for those wrongful acts.
> This evidence must be shown by clear proof for the purpose of explaining the actions or inaction of a witness and for no other purpose.
> If you find those wrongful acts occurred, then and only then may those other wrongful acts be considered for the purpose of explaining the actions or inaction of a witness.
> You may consider whether the acts were recent or remote and all other relevant factors in deciding how much weight and effect to give them

"We presume juries follow the court's instructions." *State v. Hanes*, 790 N.W.2d 545, 552 (Iowa 2010). Moreover, "[i]t is only in extreme cases that such an instruction is deemed insufficient to nullify the danger of unfair prejudice." *State v. Plaster*, 424 N.W.2d 226, 232 (Iowa 1988). This is not one of those

cases.  Under the facts and issues as presented, we find no abuse of discretion.

We therefore affirm the conviction.

**AFFIRMED.**